1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
2

3    _____

4    KONINKLIJKE PHILIPS N.V., et al.,

5                       Plaintiffs,        Civil Action
                                           No. 14-12298-DJC
6    v.
                                           December 13, 2016
7    WANGS ALLIANCE CORPORATION,           1:44 p.m.

8                       Defendant.
     _____
9

10

11                 TRANSCRIPT OF STATUS CONFERENCE

12            BEFORE THE HONORABLE DENISE J. CASPER

13                UNITED STATES DISTRICT COURT

14            JOHN J. MOAKLEY U.S. COURTHOUSE

15                    1 COURTHOUSE WAY

16                   BOSTON, MA  02210

17

18

19

20
                   DEBRA M. JOYCE, RMR, CRR, FCRR
21                     Official Court Reporter
                  John J. Moakley U.S. Courthouse
22                1 Courthouse Way, Room 5204
                       Boston, MA  02210
23                  joycedebra@gmail.com

24

25

1   APPEARANCES:

2   FOR THE PLAINTIFFS:

3   C. BRANDON RASH, ESQ.
    CARA LASSWELL, ESQ.
4   Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
    901 New York Avenue, N.W.
5   Washington, DC 20001
    202-408-4475
6
    FOR THE DEFENDANT:
7
    DAVID C. RADULESCU, ESQ.
8   TIGRAN VARDANIAN, ESQ.
    Radulescu LLP
9   Empire State Building
    350 Fifth Avenue, Suite 6910
10  New York, NY 10118
    646-502-5950

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>P R O C E E D I N G S</u>

1
2          (The following proceedings were held in open
3    court before the Honorable Denise J. Casper, United States
4    District Judge, United States District Court, District of
5    Massachusetts, at the John J. Moakley United States Courthouse,
6    1 Courthouse Way, Boston, Massachusetts, on December 13, 2016.)
7          THE CLERK:  Court is in session.  Please be seated.
8          Civil action 14-12298, <u>Philips v. Wangs Alliance</u>.
9    Would counsel please state your name for the record.
10 (01:45)   THE COURT:  Counsel?
11         MR. RASH:  I'm sorry.  Brandon Rash from Finnegan on
12   behalf of the Philips plaintiffs, and with me is my colleague
13   Cara Lasswell.
14         THE COURT:  Counsel, if you can just stand.  Thank
15   you.
16         MR. RASH:  I'm sorry.
17         THE COURT:  Counsel.
18         MS. LASSWELL:  Good afternoon, your Honor.  My name is
19   Cara Lasswell.
20 (01:45)   THE COURT:  Counsel.
21         MR. RADULESCU:  Good afternoon, your Honor.  David
22   Radulescu on behalf of Wangs Alliance Corporation.  Today with
23   me is Tigran Vardanian as well.
24         MR. VARDANIAN:  Good afternoon, your Honor.
25         THE COURT:  Good afternoon.

1          Counsel, I know we're here for a status conference.  I

2    did receive and review the last status report that I think was

3    filed the middle of last month.

4          Counsel, is there any further update about the PTAB

5    proceedings?

6          MR. RASH:  Yes, your Honor.  Again, Brandon Rash on

7    behalf of the Philips plaintiffs.

8          On November 23rd, the PTO did, in fact, issue final

9    written decisions in the proceedings.

01:46 10          There were eight patents-in-suit.  One of the patents,

11    there was no IPR proceeding.  For the remaining seven, the

12    court affirmed the patentability of all the asserted claims for

13    four of the patents.  The PTO affirmed at least some of the

14    challenged claims in two other patents.  And then there was one

15    patent where the PTO invalidated two -- the two asserted claims

16    in that patent.

17          What Philips proposes is that we are willing to

18    withdraw that one patent with no asserted claims and proceed on

19    the seven of eight patents that are still standing after the

01:46 20    IPRs.

21          THE COURT:  Okay.

22          Okay.  Thank you.

23          MR. RASH:  I believe that we're in agreement that the

24    case will proceed.  There may be a disagreement as to how to

25    proceed.  We did talk about that before the hearing today.

1          What Philips would propose -- the parties had agreed

2     to a schedule at the beginning of the case.  That was in docket

3     entry 20, I believe Appendix C.  The Court had agreed to that

4     schedule up to the claim construction hearing.

5          THE COURT:  Okay.

6          Counsel, let me -- what was it, 20?

7          MR. RASH:  Docket entry 20, Appendix C.

8          THE COURT:  Ms. Hourihan, can you print that out?

9          THE CLERK:  Sure.

01:47  10          THE COURT:  Counsel.

11          MR. RASH:  Yes, your Honor.

12          So the Court had accepted that schedule up to the

13     claim construction hearing.  We did not have any schedule after

14     the claim construction order.  Philips would ask that we -- the

15     Court adopt the remaining schedule that is keyed from the claim

16     construction order as the parties had agreed.

17          There is two issues with respect to proceeding that we

18     wanted to raise.  One is with respect to claim construction.  I

19     believe we have a disagreement on how to proceed there.

01:48  20     Philips would propose that we submit a notice that provides

21     your Honor with the final written decisions in the IPRs which

22     will provide you with the positions of the PTO on the claim

23     terms in dispute.  We also would be happy to prepare a joint

24     statement with WAC that identifies each parties' position and

25     the board's position on the disputed terms.

1        I believe the disagreement comes with respect to

2   additional briefing.  Philips believes that there should be no

3   additional briefing on claim construction.  We've already

4   briefed the issues fully in this case.  We briefed them in the

5   form of formal briefing, opening and responses.  The briefing

6   was effectively redone in the demonstratives.  If you recall,

7   your Honor, there were new claim constructions, new arguments,

8   and new case law that was cited by WAC in the demonstratives,

9   which resulted in additional briefing in the form of responsive

01:49 10   rebuttals.  And then we briefed the issues again in the form of

11   a notice of additional case law that was essentially ten new

12   pages of briefing.  And so Philips takes the position that

13   we're done on briefing with respect to the terms that are in

14   dispute in the litigation.

15        There are also additional terms that were construed in

16   the IPR proceedings.  Those disputes arose in the context of

17   those IPR proceedings, and we don't know -- we just spoke about

18   this before the hearing -- so it's not clear whether they're

19   going to be pertinent to this proceeding.  WAC is, of course,

01:50 20   estopped from raising the same arguments that were raised in

21   the IPR proceeding or any ground that reasonably could have

22   been raised.  And so we don't expect those same issues to arise

23   in this proceeding.  And, therefore, to the extent there are

24   additional terms that need to be construed, we would propose

25   doing that at the summary judgment stage.  That's not uncommon

1    in patent cases.  To the extent there's one or two terms that

2    come up in the context of a specific infringement argument, for

3    example, then we can address it at that time.

4         THE COURT:  Counsel, anything else from Philips'

5    position at this point?

6         MR. RASH:  Your Honor, I would also like to just point

7    out there are a few pending motions before the Court.

8         THE COURT:  And I just pulled up the docket while you

9    were speaking, counsel.

01:51 10        MR. RASH:  Okay.

11        The three pending motions -- there's a Philips motion

12   to compel discovery, that's docket entry 48.  As part of that

13   motion to compel, there was a brief that WAC filed, a Notice of

14   Additional Facts, that's docket entry 140.  And Philips

15   responded to that at docket entry 150 with a motion to strike

16   or respond to that.  So the docket entry 150 and docket entry

17   43 are actually pending before the Court.

18        And then also there's a docket entry 73, that's WAC's

19   motion to amend their counterclaims, that is also pending.

01:52 20        THE COURT:  Okay.

21        MR. RASH:  That is all, your Honor.

22        THE COURT:  Thank you.

23        Counsel, I'll hear you.

24        MR. RADULESCU:  Good afternoon, your Honor.

25        THE COURT:  Good afternoon.

1          MR. RADULESCU:  I'll try to sort of follow the order

2     that our colleague argued.

3          So on the IPR decisions -- there were six IPRs that

4     were instituted.  And one way to look at I think it is one and

5     a half of the patents were invalidated, and the remaining four

6     and a half are still alive.  That would be another

7     characterization of, I think, what happened in connection with

8     the six IPRs that were instituted.

9          There are two additional patents that are the subject

01:53 10    of the complaint, because there's a total of eight patents.

11    One of them was not the subject of any petition for IPR, a

12    second one was the subject of a petition, but that was denied.

13    Okay.  So that's the status of the eight patents and the six

14    IPRs that took place over the past year.  And I think from

15    there we can go to the schedule.  And we did take a look at

16    that schedule at Docket 20, and I think we have a couple

17    reactions to it.

18          First of all, I think it was done at a time in this

19    case -- and I think it was before Judge O'Toole, who, I'm sure,

01:54 20    that schedule was negotiated in light of what Judge O'Toole

21    would typically do or typically evaluate with respect to a

22    patent case.  That's one comment.

23          The second comment is there is, in fact, some items in

24    it that were disputed even after the Markman hearing.  In

25    connection -- for example, I think with respect to how

1    discovery would proceed, whether there would be a sequence of

2    fact discovery and damages.  And our overall suggestion with

3    respect to the schedule is for us to work out what you're going

4    to do with claim construction and Markman -- and I'll get to

5    that briefly -- and let's focus on that for the next couple

6    months, and then the parties should actually just get together,

7    and we should just negotiate a schedule picking up after the

8    Markman order is issued.  You know, in light of not only these

9    eight patents, I think there is this motion to amend where

01:55 10    there's two more patents that are the subject of WAC's motion

11    at docket entry 73.  You know, that needs to be really taken

12    into account as well in terms of what the schedule should look

13    like -- I'll get to that briefly.

14         And, you know, there's also the issue of appeals.

15    There is an appeal -- potential appeals from these IPR

16    decisions that I don't think either side has taken any

17    positions on.  I know they're due at approximately 63 days or

18    so from issuance.  And to the extent that there are appeals, we

19    should talk offline together to look at whether those somehow

01:55 20    should have any impact on the schedule.

21         But with respect to WAC's position, we believe let's

22    try to get the Markman issues worked out with respect to what

23    your Honor wants to do, and then, you know, in the next couple

24    of weeks we can get together with Philips and try to negotiate

25    a schedule that takes everything into account and submit, you

1   know, another proposed schedule where we can agree and we can

2   identify disputes where there are any.  And that would be our

3   proposal for how to deal with the schedule in this case.  You

4   know, clearly it's something that we should be trying to

5   negotiate together in light of where we are today, and it

6   should not be done in a situation where we just take this year,

7   or year-and-a-half-old schedule, two-year-old schedule and *en*

8   *masse* incorporate it into this case.

9        We are also going to propose in this schedule a date

01:56 10   for mediation, where I think the parties are going to discuss

11   offline -- and we raised it with Philips just before the

12   hearing -- about proposing that we possibly get a magistrate

13   involved upfront, at the very front end of this schedule.  To

14   the extent that both parties want to agree and your Honor is

15   willing to do it, we would propose that some magistrate get

16   involved with trying to mediate in light of where we are.  We

17   think it's a good juncture for it to happen.

18        THE COURT:  Counsel, where do you anticipate that

19   being, after claim construction?

01:57 20        MR. RADULESCU:  I think it would be immediately.  I

21   think that we would just simply get together with Philips.  I

22   think they're going to end up agreeing, there's no downside,

23   and we would just find a magistrate that you would appoint and

24   give us a date certain that all the parties can get together in

25   a room here in the courthouse.  I don't think it needs to wait

1   until any claim construction order at this point.

2        THE COURT:  Counsel, just to back up for a moment.  In

3   terms of the PTAB decisions on the IPR, my memory from perhaps

4   when you were arguing before me from claim construction is

5   those aren't necessarily binding on me, but they can certainly

6   be argued to me as persuasive authority; am I correct about

7   that?

8        MR. RADULESCU:  Yes.  And I did want to now address

9   exactly that, what we think should happen on claim

01:58 10   construction.

11        Clearly, the record in front of the PTAB is actually

12   part of the intrinsic record of these patents, and the claims

13   need to be construed in light of this intrinsic record.  As a

14   matter of law, you have to do it.  And it's our understanding

15   that out of the six patents, I believe there were five

16   additional terms that were construed by the PTAB across half of

17   the patents -- where the Patent Office has already construed

18   these five terms across half the patents.  We believe that's

19   another factor in terms of trying to, you know, get the Markman

01:59 20   issues straightened out.

21        Our view on how we think it makes sense to proceed is

22   for, again, the parties to simply get together over the next

23   few weeks, let's do a joint claim construction chart similar to

24   what I heard Philips, I think, propose.  We would propose a

25   joint statement.  Where we can agree, we agree; where we

1    disagree, we will end up disagreeing.  With respect to the five

2    additional terms that were construed by the PTAB, the parties

3    will evaluate those as well.  But let's do a joint statement so

4    that we can have one document by which the Court can look at

5    and focus on for purposes of this case.

6         Clearly, in connection with the PTAB and the IPR

7    proceedings, there were conflicting positions that were taken,

8    that there are terms where positions taken in front of the PTAB

9    are conflicting with the positions taken in front of the

02:00 10   District Court.

11        We believe the way to proceed after we do this joint

12   statement is to simply put in one more -- put in a brief that

13   allows your Honor to focus on just the two briefs -- we would

14   exchange them, do them simultaneously -- you have two briefs,

15   you have one statement, and in this brief we set forth the

16   arguments as to how the claims should be interpreted in light

17   of the full record, which includes the IPR.  And we believe it

18   shouldn't be just a notice, because you need to construe these

19   terms that takes everything into account.  And, in fact,

02:00 20   putting you through going back to the four old briefs, going

21   back to I think two sets of slides, it's a lot of assimilation

22   to do.  And the concept that you're going to do that with just

23   simply a notice of what happened in the PTAB is pretty tough.

24   There's seven opinions -- six or seven opinions.  I couldn't do

25   it.  So I don't think it makes any sense for putting the burden

1    on the Court to go through four old briefs, two new notices,

2    two rounds of slides to try to construe these claims, you know,

3    as a matter of law, right.  These are issues of law.  These are

4    issues of where you got to get it right.  And our proposal

5    would be let's do a joint chart.  We can do that over the next

6    few weeks.  Let's do simultaneous briefing on the disputes, and

7    now you have two briefs, a chart, takes everything into

8    account, and if you want to have a hearing, have a hearing.  If

9    you want to just do it based on the briefing, do it based on

02:01 10    the briefing.  But at least it gives us the ability to argue

11    why the claims should be construed in a way that we're

12    proposing that actually takes into account the arguments that

13    were, in fact, made before the PTAB, so that you're not stuck

14    going through six decisions trying to figure out which

15    arguments conflict, which ones don't, because you need to get

16    it right.  That would be our proposal on claim construction.

17            There is a couple more points to make.

18            (Discussion off the record.)

19            MR. RADULESCU:  As Mr. Vardanian points out, what the

02:02 20    patentee says during the PTAB arguments is very important as to

21    what the scope of the claims mean.  It's part of the intrinsic

22    record.  It's just like reading the regular prosecution history

23    or reading the spec.  And I think the burden should be on us to

24    explain the relevance of these statements to the claim

25    construction issues.

1          THE COURT:  Okay.

2          Counsel, did you have something else?  Yes.

3          MR. RADULESCU:  I did.

4          THE COURT:  Okay.

5          MR. RADULESCU:  So there was a reference to estoppel.

6     There's a reference to, oh, we're estopped from somehow arguing

7     something, and that's wrong.

8          Claim construction, as a matter of law, you need to

9     take all the evidence into account, including the prosecution

02:03 10   history and the IPR record.  And we are allowed to argue as a

11    matter of law what the claims mean or don't mean.  There's no

12    estoppel for purposes of this case in terms of how the claims

13    should be construed.

14          There is a limited estoppel in connection with

15    validity.  For purposes of a jury trial, obviously there may be

16    instances where the defendant is estopped from raising certain

17    validity arguments.  It's not all of them, it's some of them,

18    depending upon the specific issues that are being raised.

19          There is absolutely no estoppel on infringement.  So

02:04 20   there's no effect of the IPR proceeding that's somehow going to

21    estop WAC, as the defendant, from arguing why there's no

22    infringement in light of the fact that these IPRs were filed.

23          So I just wanted to point out that with respect to the

24    comment on estoppel; it's not as what we heard.  We clearly are

25    not estopped from arguing non-infringement, and we clearly

1    aren't estopped from arguing claim construction in light of

2    that intrinsic record.

3          And then I think that brings me to the pending

4    motions, unless there's any other questions you had on the

5    schedule.

6          THE COURT:  Your brother identified, I think, Docket

7    43, 73, and 140?

8          MR. RADULESCU:  Yes.

9          So there is a -- Philips motion to compel -- which I

02:04 10   thought was Docket 48, but maybe it's 43 -- and we did

11   provide -- after my firm got engaged on this matter, we ended

12   up lobbying in at Docket 140 a Notice of Additional Facts,

13   which simply tried to just make clear to your Honor that we

14   have done what we can to moot disputes, and we obviously are in

15   a position of wanting to negotiate some type of resolution so

16   your Honor doesn't have to be stuck going through an old motion

17   to compel that was done prior to a substantial production of

18   documents that we were involved with doing after we got

19   engaged.

02:05 20         So my suggestion on that on that is give the parties

21   some time to try to negotiate, and if Philips wants to somehow

22   file a renewed motion that's triggered off the actual record

23   that this case exists in at present, that they should do it.

24   But we would hope that we can work it out with Philips to get

25   them whatever information they think they are missing at this

1    point.

2         There is Docket 73, which is a motion to amend the

3    counterclaim.  And the history for that one is that Philips

4    asserted two additional patents in their infringement

5    contentions prior to the time that my firm got involved.  So it

6    went from an eight-patent case to a ten-patent case through

7    these allegations of infringement.  And then they strategically

8    decided we're going to withdraw.  We're going to withdraw these

9    contentions on those two additional patents, and it was done

02:06 10    for strategic reasons.  And we ended up saying, Well, we

11    shouldn't have to live under this threat of additional

12    infringement claims, so we filed a motion to amend our

13    counterclaim to add them to the case.

14         And I believe that's -- that motion is just sitting

15    out there, and I believe that we should be getting together

16    with Philips when we try to negotiate a schedule to decide if

17    it makes sense to put them in or put them out.  Obviously, new

18    patents in the case, you would think, should somehow affect the

19    schedule.  And it may be that we can come to an agreement that

02:07 20    somehow takes all of it into account and, you know, at least

21    presents any disputes in a logical way to your Honor where you

22    can look at the big picture, look at all the facts, and have

23    something in front of you in written form that identifies where

24    we are and where we should be going.

25         THE COURT:  Thank you, counsel.

1          MR. RADULESCU:  You're welcome.

2          THE COURT:  Counsel, just to ask you to respond to the

3    timing of mediation, then I'm going to return to the whole

4    claim construction scheduling/briefing issue.

5          MR. RASH:  Yes, your Honor.

6          We do -- we are amenable to a mediation, and we're

7    happy to meet and confer on the timing for that.  We don't have

8    any reason to delay that.  So it's when the parties are

9    available, we're okay with that.

02:08 10          THE COURT:  Okay.

11          Counsel, I guess a few things -- and you can be

12    seated.  Thank you.

13          First, if both parties are willing, I'll certainly

14    refer you to mediation.  I imagine you're going to continue

15    your informal discussions, but given that the magistrates -- I

16    think, Ms. Hourihan -- are scheduling about six weeks out --

17    sooner rather than later makes sense in terms of a referral.

18          Counsel, in terms of the claim construction -- and I

19    had to refresh myself a little on the sequence here, but I do

02:08 20    remember the full-blown claim construction, at least from the

21    Court's point of view.  I got pretty far down the road of

22    considering your arguments.  So I both don't want to have

23    anyone, including myself, reinvent the wheel.  On the other

24    hand, I recognize what came out of the PTAB would be useful and

25    probably necessary for me to consider.

1          I guess, counsel, what I was thinking about as a

2    logistical matter, is I recall that the parties put together a

3    joint chart in regards to their claim construction contentions

4    for the purposes of the Markman hearing.  I'm wondering -- or

5    I'm thinking it would be most useful for me if that could be

6    annotated in some way to reflect what the parties' changes in

7    positions are or what additional findings came out the PTAB

8    that you'd want to draw to my attention as to each of the

9    claims.  Does that make some sense?

02:10 10          MR. RASH:  Yes, your Honor.  We'd be willing to do

11    that, and we appreciate your observation in terms of not

12    reinventing the wheel.  That's really what we're trying to

13    avoid here, is starting from scratch.

14          THE COURT:  I guess what counsel is -- some part of

15    why I suggested the annotating the chart is just because there

16    was a framework that both sides were working with and that I

17    was certainly operating in.  It would be useful to know how the

18    PTAB decisions affected that.  And I guess I'd be inclined to

19    see that first and then decide if I'm going to allow further

02:10 20    briefing.  Obviously counsel should give me the decisions from

21    the PTAB, but I think that would be my first inclination after

22    you perhaps devote your energies, time, and money to the

23    mediation efforts.

24          So, counsel, I don't know how far along you got in

25    terms of discussing what time you were looking for.  My

inclination would be to refer you to mediation, see what date

is set there, and then set a date for this annotated submission

at some point after that to allow you enough time to focus on

mediation and not have to turn to doing the submission until

it's clear that you need to.

So, counsel, with that said, I can do the referral

now, but in terms of timing, if we assume -- Ms. Hourihan,

what's six weeks from today?

(Discussion off the record.)

02:12  MR. RASH:  Excuse me, your Honor.  May I just point

out that Philips does oppose the mediation to the extent it's

going to delay the case.  We have been negotiating with WAC

since 2010.  And so while we are certainly amenable to

mediation, we would prefer that WAC not use that as an

opportunity to delay the case.

THE COURT:  Well, I guess, counsel, I'm not sure that

it's further -- well, I guess my view is, having this

conversation or mediation front-loaded is probably better.

But, counsel, do you want to add anything?

02:13  MR. RADULESCU:  Yeah, I mean, I think, you know, it's

clearly not done for delay purposes.  It's clearly done to try

to do this logical, and, you know, that would be our proposal.

THE COURT:  Okay.

So, counsel, what I'm inclined to do is -- looking at

the calendar and just allowing somewhat for the holidays, both

1    for counsel and for the magistrate judge, I'd be inclined to

2    refer you to mediation today and set February 28th -- and that

3    was somewhat counting six weeks from the end of the holidays --

4    for February 28th as the deadline for -- the annotated original

5    claim construction chart to be annotated with the parties'

6    current positions to allow me to see where you are now, and

7    also for submission of the IPR decisions.  No further briefing

8    other than -- other than that, counsel.  And then what I'd be

9    inclined to do is probably see you sometime in the month of

02:14  10   March.  And since you're all here, we can pick a date for that.

11        MS. LASSWELL:  Philips is open in March, your Honor.

12        THE COURT:  Say it again?

13        MR. RASH:  Philips is open in March.

14        MR. RADULESCU:  We'll try to make whatever date you

15   propose work.

16        THE COURT:  Counsel, just give me a second here.

17        (Discussion off the record.)

18        THE COURT:  Okay.

19        March 15th at 3:00, counsel.

02:16  20        So, counsel, I'm inclined to take it in those steps to

21   begin, and I will take a look at the pending motions, which

22   I'll probably also discuss with you when I see you in March.

23        Counsel, anything else I should do at this point?

24   I'll make the referral.  Is there any -- well, is there any

25   preference for magistrate judge?

```
 1              MR. RASH:  Not from Philips, your Honor.

 2              MR. RADULESCU:  So we found out, I think this

 3     afternoon, that Philips has apparently mediated in front of

 4     Judge Sorokin pretty successfully.

 5              THE COURT:  He's a District Court judge now.

 6              MR. RADULESCU:  I know that.  I don't know if there's

 7     any benefit to having someone who has at least been through it

 8     once already, but that, again, is something that -- you know --

 9     that we can discuss.

02:17 10              THE COURT:  Okay.

11              Well, counsel, I'll make the general referral, unless

12     counsel reaches out to Ms. Hourihan with any sort of joint

13     preference.  I think the only magistrate it couldn't -- and I

14     should also mention Judge Harrington -- Senior Judge Harrington

15     is also doing mediations.  The only magistrate judge I think it

16     can't be, Ms. Hourihan, is Collings, perhaps?

17              (Discussion off the record.)

18              THE COURT:  But I think other than that -- because he

19     was, I think, assigned to the case at some point, other than

02:17 20     that it could be anyone.  But I think if there's a joint

21     preference, I think they try to accommodate that.

22              MR. RADULESCU:  Thank you, your Honor.

23              MR. RASH:  Your Honor, if I could just clarify one

24     thing, just to make sure there is no dispute here.

25              It is our understanding that fact discovery will be
```

1    proceeding here.  We also wanted to raise that damages

2    discovery was bifurcated, but we think now is the appropriate

3    time to allow that to proceed.  Damages discovery is important

4    at this time to facilitate simplifying the case.  When we

5    understand the damages associated with accused products, it

6    allows us to narrow the case as appropriate.  We think that can

7    be very helpful going forward before the end of fact discovery

8    and before expert discovery and summary judgment, and we also

9    think that that would help with facilitating settlement.

02:18 10          THE COURT:  Well, counsel, I think in some ways that

11    may be defeating the front-loading of mediation, but,

12    counsel --

13          MR. RADULESCU:  I think the status quo should -- I

14    guess general fact discovery can proceed.  With respect to the

15    damages-related discovery, I think the order said that we're

16    going to wait until we get a Markman decision to sort of start

17    that up.  So our preference would be to keep the status quo

18    with respect to damages discovery.  I do know that in the

19    context of, you know, settlement negotiations, there has been

02:19 20    some financial information exchanged, and --

21          THE COURT:  Counsel, for what it's worth, I mean, I'm

22    inclined to keep the status quo about what is otherwise going

23    on in this case and not jump to formal damages discovery.  My

24    memory is, counsel -- and I think each of the magistrates have

25    their own practice -- but there's usually statements that they

1   ask for from either side for the purposes of facilitating a

2   meaningful mediation, and perhaps that's something Philips can

3   raise with the magistrate judge for the purposes of having a

4   fruitful discussion.

5           MR. RASH:  Okay.

6           We would appreciate that.

7           THE COURT:  Thank you, counsel.

8           MR. RADULESCU:  Thank you, your Honor.

9           THE CLERK:  All rise.

02:20 10           (Court adjourned at 2:20 p.m.)

11           - - - - - - - - - - - -

12                      CERTIFICATION

13       I certify that the foregoing is a correct transcript

14   of the record of proceedings in the above-entitled matter to

15   the best of my skill and ability.

16

17

18

19   /s/Debra M. Joyce_____          January 6, 2017_____
     Debra M. Joyce, RMR, CRR, FCRR      Date
20   Official Court Reporter

21

22

23

24

25