# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

KONINKLIJKE PHILIPS N.V. and
PHILIPS LIGHTING NORTH AMERICA
CORPORATION,

                   Plaintiffs,

        v.

WANGS ALLIANCE CORPORATION d/b/a
WAC LIGHTING CO.,

                 Defendant.

CIVIL ACTION NO. 14-cv-12298-DJC

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
## PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND ......................................................................................................... 3

    A.    Case History and WAC's Invalidity Contentions ..................................... 3

    B.    Procedural History and Outcome of the IPRs ........................................... 5

        1.    '774 Patent IPR ............................................................................. 5

        2.    '890 Patent IPR ............................................................................. 5

        3.    '690 Patent IPR ............................................................................. 6

        4.    '399 Patent IPR ............................................................................. 6

        5.    '138 Patent IPR ............................................................................. 7

III.    LEGAL STANDARDS ............................................................................................. 7

    A.    Summary Judgment .................................................................................. 7

    B.    AIA Estoppel Provision ........................................................................... 8

IV.    ARGUMENT ............................................................................................................. 9

    A.    Summary Judgment of No Invalidity Is Warranted with Respect to Patents and Printed Publications over Which the PTO Affirmed the Patentability of the Asserted Claims in a Final Written Decision ............................................... 10

    B.    Summary Judgment of No Invalidity Is Warranted with Respect to the Remaining Patents and Printed Publications that WAC Raised or Reasonably Could Have Raised During the IPRs ................................................. 11

        1.    WAC is estopped from asserting invalidity based on patents and printed publications that WAC raised in its IPR petitions, but on which the PTO denied institution on the merits ........................................ 11

        2.    WAC is estopped from asserting invalidity based on patents and printed publication that WAC did not raise—but reasonably could have raised—in its IPR petitions ............................................. 14

        3.    Summary judgment is warranted for patents and printed publications not already in WAC's invalidity contentions for the additional reason that the deadlines for contentions have passed. ............ 18

V.    CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Biscotti Inc. v. Microsoft Corp.*,
No. 2:13-cv-01015 (E.D. Tex. June 2, 2017)........................................................ 13

*Biscotti Inc. v. Microsoft Corp.*,
No. 2:13-cv-01015, 2017 WL 2526231 (E.D. Tex. May 11, 2017) .............................. passim

*Chicago District Council of Carpenters Pension Fund v. Champion Drywall, Inc.*,
No. 04-cv-5199, 2005 WL 1498857 (N.D. Ill. May 19, 2005)................................. 2

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
No. 2:15cv21 (E.D. Va. June 5, 2017).............................................................. 8, 15

*Douglas Dynamics, LLC v. Meyer Products LLC*,
No. 14-cv-886, 2017 WL 1382556 (W.D. Wis. Apr. 18, 2017)......................... 2, 15

*Englishtown, Inc. v. Rosetta Stone Inc.*,
962 F. Supp. 2d 355 (D. Mass. 2013) .............................................................. 19

*Freytag v. Commissioner*,
501 U.S. 868 (1991)....................................................................................... 16

*Hines v. State Room, Inc.*,
665 F.3d 235 (1st Cir. 2011) .......................................................................... 7

*HP Inc. v. MPHJ Technology Investments,LLC*,
817 F.3d 1339 (Fed. Cir. 2017)................................................................ 8, 12, 13

*iLife Technologies, Inc. v. Nintendo of America Inc.*,
No. 13-cv-4987 (N.D. Tex. Mar. 1, 2017)........................................................ 15

*Intellectual Ventures I LLC v. Toshiba Corp.*,
No. 13-cv-453, 2017 WL 107980 (D. Del. Jan. 11, 2017) ............................... 16, 17

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016)....................................................................... 16

*Manufacturers Hanover Trust Co. v. Horak*,
No. 88-cv-532, 1989 WL 2082 (D.N.J. Jan. 12, 1989)........................................ 2

*Parallel Networks Licensing, LLC v. International Business Machine Corp.*,
No. 13-cv-2072, 2017 WL 1045912 (D. Del. Feb. 22, 2017)................................. 7, 8, 17, 18

*Precision Fabrics Group, Inc. v. TieTex International, Ltd.*,
No. 1:13-cv-645, 2016 WL 6839394 (M.D.N.C. Nov. 21, 2016) ........................... 7

*SAS Institute, Inc. v. ComplementSoft, LLC*,
    825 F.3d 1341 (Fed. Cir. 2016)................................................................ 8, 9, 12, 15

*Shaw Industries Group, Inc. v. Automated Creel Systems, Inc.*,
    817 F.3d 1293 (Fed. Cir. 2016).................................................................. 8, 12, 13

*U.S. v. Alaska*,
    521 U.S. 1 (1997)................................................................................................ 16

**Statutes**

35 U.S.C. § 102.............................................................................................. 1, 3, 19

35 U.S.C. § 103.............................................................................................. 1, 3, 19

35 U.S.C. § 312...................................................................................................... 16

35 U.S.C. § 315................................................................................................. passim

35 U.S.C. § 316...................................................................................................... 16

**Rules**

Fed. R. Civ. P. 26(f).............................................................................................. 3

Fed. R. Civ. P. 56.................................................................................................. 7

**Other Authorities**

Local Rule 16.1 ...................................................................................................... 3

Local Rules, App'x E.......................................................................................... 18

**Legislative History**

157 Cong. Rec. S1360 (daily ed. Mar. 8, 2011) (statement of Sen. Grassley)............................... 9

157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl)...................................... 8

157 Cong. Rec. S952 (Feb. 28, 2011) (statement of Sen. Grassley) ........................................... 9

*America Invents Act: Hearing on H.R. 1249 Before the House Comm. on the Judiciary*,
    112th Cong. 52-53 (2011) (statement of D. Kappos, Director) ................................................ 9

*Patent Reform: The Future of American Innovation: Hearing Before the Senate Comm.
    on the Judiciary*, 110th Cong. 136-137 (2007) (statement of J. Dudas, Director) .................. 9

## LIST OF EXHIBITS

Exhibit 1:     Defendant WAC Lighting Co.'s Initial Non-Infringement and Invalidity
               Contentions (Jan. 8, 2015)

Exhibit 2:     Defendant WAC Lighting Co.'s Supplemental Non-Infringement and
               Invalidity Contentions (April 23, 2015)

Exhibit 3:     Order, *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-1015 (E.D. Tex. June 2,
               2017)

Exhibit 4:     Opinion & Order, *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15-cv-21
               (E.D. Va. June 5, 2017)

Exhibit 5:     Order, *iLife Technologies, Inc. v. Nintendo of America Inc.*, No. 13-cv-4987
               (N.D. Tex. Mar. 1, 2017)

Exhibit 6:     Joint Stipulation of Dismissal, *Technical Consumer Products, Inc. v. U.S.
               Philips Corp.*, No. 1:12-cv-02546 (N.D. Ohio Jan. 6, 2014) (ECF No. 53)

## I.    INTRODUCTION

Over three years ago, Philips Lighting filed this case against Wangs Alliance Corporation ("WAC")—a competing lighting company—for infringing patents relating to energy-efficient LED lighting products.  A year later, WAC sought to stay the case and move the invalidity dispute to the U.S. Patent and Trademark Office ("PTO") via *inter partes* review (IPR) proceedings before the Patent Trial and Appeal Board ("PTAB"),[1] where WAC perceived higher odds of success.  WAC enjoyed procedural and evidentiary advantages in that forum, including no presumption of validity, a lower burden of proof, and a broader claim construction standard that more easily renders patents invalid.  After an 18-month effort, during which WAC presented its best arguments based on its best prior art, the PTO affirmed the vast majority (27 out of 32) of the challenged claims, either denying institution of WAC's IPR grounds outright or finding claims patentable in a final written decision after an evidentiary trial that included testimony from the parties' experts.

Philips Lighting now seeks summary judgment of no invalidity under 35 U.S.C. § 102 and § 103 based on patents and printed publications for the five patents-in-suit that reached a final written decision and for which challenged claims survived: U.S. Patent Nos. 6,250,774 ("the '774 patent"), 6,586,890 ("the '890 patent"), 6,561,690 ("the '690 patent"), 7,038,399 ("the '399 patent"), and 7,352,138 ("the '138 patent").[2]  Summary judgment is appropriate because the America Invents Act ("AIA"), 35 U.S.C. § 315(e)(2), estops WAC from asserting these defenses. Intending for IPRs to be a complete alternative to litigation, Congress crafted the § 315(e)(2) estoppel provision to estop not only grounds "raised" in the IPR, but also "any ground" that the

---

[1] The PTAB is a panel comprised of three administrative patent judges who preside over the IPR.
[2] The remaining patents-in-suit are not part of this motion.

petitioner "reasonably *could* have raised."  As other courts have decided, "if you take the IPR alternative, you have to be satisfied with the PTAB answer; you cannot re-litigate the matter in district court."  *Douglas Dynamics, LLC v. Meyer Prods. LLC*, No. 14-cv-886, 2017 WL 1382556, at *1 (W.D. Wis. Apr. 18, 2017); *see id.* at *4 ("If the defendant pursues the IPR option, it cannot expect to hold a second-string invalidity case in reserve in case the IPR does not go defendant's way.").  Contrary to the language and purpose of the estoppel provision, WAC is trying to start over on invalidity by asserting defenses before this Court that WAC raised or reasonably could have raised in its IPR petitions—some are new contentions and thus barred for the additional reason that the contention deadlines have passed.

This motion is ripe because the relief sought will substantially simplify this case, which WAC promised would occur when it sought the stay.  The stay has lifted, and the parties are proceeding with fact discovery, to be followed by expert discovery and summary judgment on the merits.  Absent a ruling on invalidity based on patents and printed publications, the parties and the Court will needlessly expend resources re-litigating moot issues—including fact depositions, opening and responsive expert reports, expert depositions, and briefing and oral argument on summary judgment motions.[3]

---

[3] *See Chi. Dist. Council of Carpenters Pension Fund v. Champion Drywall, Inc.*, No. 04-cv-5199, 2005 WL 1498857, at *2 (N.D. Ill. May 19, 2005) (granting summary judgment where "there is no need to waste Plaintiffs' and the court's time and resources proceeding onward in discovery"); *Mfrs. Hanover Tr. Co. v. Horak*, No. 88-cv-532, 1989 WL 2082, at *2 (D.N.J. Jan. 12, 1989) (granting summary judgment before the end of discovery noting "the need to conserve the Court's limited resources and to save litigants from unnecessary expense").

## II.   BACKGROUND

### A.      Case History and WAC's Invalidity Contentions

Philips Lighting filed the complaint in May 2014.  D.I. 1.  Later that year, the parties

submitted a joint report under Fed. R. Civ. P. 26(f) and Local Rule 16.1(d), agreeing to a

proposed schedule for patent disclosures, including invalidity contentions, "as delineated in the

'Sample Special Scheduling Order for Patent Infringement Cases' found in Appendix E to the

Local Patent Rules."  D.I. 20 at 8.  The Court adopted the parties' proposed schedule "as to

events occurring before the claim construction hearing."  D.I. 23.  According to the agreed

schedule, preliminary invalidity contentions were due on January 8, 2015, and supplemental

invalidity contentions were due thirty days before the claim construction hearing, which the

parties agreed to extend to April 23, 2015, at WAC's request.  *See* D.I. 20-3 at 1-2; D.I. 22.

In its preliminary contentions (Ex. 1[4]), WAC alleged invalidity under 35 U.S.C. § 102

(anticipation) and § 103 (obviousness) of the asserted claims in the patents-at-issue as follows:

> '774 Patent - claims 1, 3, 5, 6,[5] and 14 based on U.S. Patent
> Nos. 1,888,995, 4,975,814, 5,704,709, and 5,803,579 ("Turnbull");
> and "High Luminous Flux Semiconductor Wafer-bonded
> AlGaInP/GaO Large-area Emitters" by F. A. Kish et al. ("Kish").
> *See* Ex. 1 at 6, 18-20.

> '890 Patent - claims 7, 15, 23, and 31 based on U.S. Patent
> Nos. 4,721,344, 5,634,711, 6,009,005, and 6,400,101 ("Biebl");
> and U.S. Publication No. 2002/0047642.  *See* Ex. 1 at 8, 23-26.

> '690 Patent - claims 1 and 6 based on U.S. Patent Nos. 4,880,974,
> 4,978,843 ("Yamakawa"), 5,173,810 ("Yamakawa II"),
> and 5,871,272 ("Sharrah").  *See* Ex. 1 at 7, 20-23.

---

[4] Citations to "Ex." refer to exhibits to the Declaration of C. Brandon Rash in Support of Philips
Lighting's Partial Motion for Summary Judgment of No Invalidity, filed concurrently herewith.
[5] Pursuant to Philips Lighting's First Supplemental Preliminary Infringement Disclosure of
February 5, 2015, Philips Lighting is no longer asserting claim 6 of the '774 patent.

> '399 Patent - claims 7, 8, 17, 18, 28 and 34 based on U.S. Patent Nos. 5,661,645 ("Hochstein"), 6,150,771 ("Perry"), and 6,225,759 ("Bogdan"), and PCT Publication Nos. WO 99/30537 and WO 00/42700. *See* Ex. 1 at 10, 31-34.

> '138 Patent - claims 1, 2, 9, 10, 20, and 21 based on Hochstein, Perry, Bogdan, U.S. Patent No. 6,388,393, and PCT Publication Nos. WO 99/30537 and WO 00/42700. *See* Ex. 1 at 11, 35-37.

In its supplemental contentions (Ex. 2), WAC added the following invalidity allegations:

> '774 Patent - claims 1 and 14 based on U.S. Patent No. 5,278,432. *See* Ex. 2 at 6, 18-20.

> '890 Patent - claims 7, 15, and 23 based on "UCC2813/3813 Low Power Economy BiCMOS Current Mode PWM Datasheet" by Unitrode Corp. ("Unitrode Datasheet"), "UC2842/3842 Current Mode PWM Controller" by STMicroelectronics ("ST Micro Datasheet"), and "The Art of Electronics (2d. Ed.)" by P. Horowitz et al. ("Horowitz"). *See* Ex. 2 at 8, 23-27.

Between the exchange of preliminary and supplemental contentions, the parties fully briefed claim construction (*see* D.I. 35, 40, 48, 52, 60), and the Court held two claim construction hearings, on May 20 and June 2, 2015. D.I. 80, 87. On May 28, 2015, WAC filed IPR petitions at the PTO (D.I. 95 at 7), and on June 16, 2015, WAC moved to stay the case pending the outcome of the IPRs, arguing that they would "significantly simplify this case" (D.I. 95 at 21; *see also* D.I. 131 at 3). Relying in part on the understanding that the IPRs would "narrow this case," the Court granted a stay in January 2016. D.I. 156.

In November 2016, the PTO issued final written decisions in the IPRs (D.I. 174), and the stay lifted. Following a March 15, 2017, status conference (D.I. 177), the parties submitted supplemental claim construction briefing (D.I. 178, 179). The Court's claim construction order is pending, and fact discovery between the parties is ongoing, with damages discovery scheduled to begin after claim construction (D.I. 22). Although the Court has not yet scheduled events after the claim construction hearing, the parties previously agreed to a schedule for remaining

discovery—including final contentions and expert discovery—and summary judgment that is keyed to the Court's claim construction order.  *See* D.I. 20-3 at 2-3.

### B.      Procedural History and Outcome of the IPRs

On May 28, 2015, the last day allowed by the AIA, WAC filed IPR petitions at the PTO to challenge the validity of all asserted claims in the '774, '890, '690, '399, and '138 patents under 35 U.S.C. §§ 102 and 103, based on some—but not all—of the references identified in its invalidity contentions as well as new art not identified in its contentions.[6]  In November 2016, approximately 18 months after receiving WAC's petitions and after an all-day trial before a three-judge panel, the PTO issued final written decisions affirming the validity of almost all of the claims that WAC challenged, as explained below.

### 1.      '774 Patent IPR

WAC's IPR petition for the '774 patent was based on one ground: claims 1, 3, 5, and 14 as obvious over Turnbull in view Kish.  D.I. 118-3 at 2.  The PTO instituted the IPR, and after a trial, issued a final written decision affirming the patentability of all challenged claims. D.I. 174-2 at 2.  WAC is not appealing this decision within the PTO or to the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit").

### 2.      '890 Patent IPR

WAC's IPR petition for the '890 patent was based on three grounds: (1) claims 7, 15, and 23 as anticipated by Biebl; (2) claims 23 and 31 as obvious over Biebl in view of Hochstein;

---

[6] WAC also filed IPR petitions on two other patents-in-suit—U.S. Patent Nos. 6,013,988 ("the '988 patent") and 6,147,458 ("the '458 patent")—which are not part of this motion because they did not reach a final written decision with asserted claims surviving.  The PTO denied institution of WAC's petition for the '458 patent on the merits because the PTO found that WAC had no reasonable likelihood of success (D.I. 118-2 at 12), and the PTO found the two asserted claims in the '988 patent unpatentable (D.I. 174-1 at 2).  WAC did not file a petition for the remaining patent-in-suit—U.S. Patent No. 6,788,011.

and (3) claims 7, 15, 23, and 31 as obvious over the ST Micro Datasheet in view of Biebl. D.I. 118-5 at 5.  The PTO instituted Ground 1 for only claims 15 and 23 and instituted Ground 3 on all challenged claims, but denied institution of both Ground 1 for claim 7 and Ground 2 because there was no reasonable likelihood of success.  D.I. 118-5 at 10, 13; D.I. 174-4 at 4. After a trial, the PTO issued a final written decision, finding only claims 15 and 23 unpatentable and affirming the patentability of claims 7 and 31.  D.I. 174-4 at 28.  WAC is not appealing this decision within the PTO or at the Federal Circuit.

### 3.      '690 Patent IPR

WAC's IPR petition for the '690 patent was based on four grounds: (1) claims 1, 5,[7] and 6 as anticipated by Yamakawa; (2) claim 1 as anticipated by Sharrah; (3) claims 1 and 5 as anticipated by Yamakawa II; and (4) claim 6 as obvious over Yamakawa II.  D.I. 118-4 at 5. The PTO instituted only Ground 2 based on Sharrah, but denied the remaining grounds for lack of a reasonable likelihood of success, leaving claims 5 and 6 challenged but not found unpatentable.  *Id.* at 10, 16, 18.  After a trial, the PTO issued a final written decision finding only claim 1 anticipated by Sharrah.  D.I. 174-3 at 34.  Philips Lighting is appealing this decision to the Federal Circuit.

### 4.      '399 Patent IPR

WAC's IPR petition for the '399 patent was based on three grounds: (1) claims 7, 8, 17, 28, and 34 as anticipated by Hochstein; (2) claims 7, 8, 17, 28, and 34 as obvious over Bogdan in view of Hochstein; and (3) claims 7, 8, 17, 18, 28, and 34 as obvious over Hochstein in view of U.S. Patent No. 5,818,705 ("Faulk").  D.I. 118-7 at 7.  The PTO instituted these grounds, and

---

[7] Although WAC requested review of claim 5 of the '690 patent, Philips Lighting has not asserted that claim against WAC.

after a trial, issued a final written decision affirming the patentability of all challenged claims. D.I. 174-6 at 34.  WAC is appealing this decision to the Federal Circuit.

### 5.    '138 Patent IPR

WAC's IPR petition for the '138 patent was based on three grounds: (1) claims 1, 2, 9, 10, 11, 20, 31, 33, and 34 as anticipated by Hochstein; (2) claims 1, 2, 9, 10, 11, 20, 31, 33, and 34 as obvious over Bogdan in view of Hochstein; and (3) claims 1, 2, 9, 10, 11, 20, 21, 31, 33, and 34 as obvious over Hochstein in view of Faulk.  D.I. 118-6 at 6.  The PTO instituted these grounds, and after a trial, issued a final written decision affirming the patentability of all challenged claims.  D.I. 174-5 at 34.  WAC is appealing this decision to the Federal Circuit.

## III.  LEGAL STANDARDS

### A.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter law." Fed. R. Civ. P. 56(a).  Partial summary judgment may be granted for a particular defense, or part of a defense, even if it is not sought for every defense asserted.  *Id.*; *see, e.g.*, *Hines v. State Room, Inc.*, 665 F.3d 235, 236 (1st Cir. 2011).  Court have granted summary judgment of no invalidity based on the AIA estoppel.  *See, e.g.*, *Parallel Networks Licensing, LLC v. Int'l Bus. Mach. Corp.*, No. 13-cv-2072, 2017 WL 1045912, at *11-12 (D. Del. Feb. 22, 2017) (granting summary judgment of no invalidity because estoppel applies to "any references that were known to the petitioner or that could have reasonably been discovered by 'a skilled searcher conducting a diligent search'"); *Precision Fabrics Grp., Inc. v. TieTex Int'l, Ltd.*, No. 1:13-cv-645, 2016 WL 6839394, at *9 (M.D.N.C. Nov. 21, 2016) (granting summary judgment of no invalidity for non-petitioned grounds because they were estopped under § 315(e)(2)).

### B.      AIA Estoppel Provision

The AIA provides:

> The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision under section 318(a), or the real party in interest or privy of the petitioner, may not assert . . . in a civil action arising in whole or in part under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

35 U.S.C. § 315(e)(2).  Courts have interpreted "reasonably could have raised" to include any patent or printed publication that was known to the petitioner or that "a skilled searcher conducting a diligent search reasonably could have been expected to discover."  *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015, 2017 WL 2526231, at *6-7 (E.D. Tex. May 11, 2017) (quoting 157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl)).[8]  There are no Federal Circuit holdings interpreting the § 315(e)(2) provision.  Ex. 4, *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15-cv-21, slip op. at 4-5 (E.D. Va. June 5, 2017).  As explained further below, the Federal Circuit has discussed—in dicta—aspects of another estoppel provision, § 315(e)(1), which applies only to subsequent PTO proceedings, and this dicta has caused a split in district court opinions regarding the scope of § 315(e)(2).  *Id.* (citing *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293 (Fed. Cir. 2016); *HP Inc. v. MPHJ Tech. Investments, LLC*, 817 F.3d 1339 (Fed. Cir. 2017)).

In an opinion dissenting on a separate issue, Judge Newman summarized the legislative history associated with the § 315(e) estoppel provision.  *See SAS Inst., Inc. v. ComplementSoft, LLC*, 825 F.3d 1341, 1354-59 (Fed. Cir. 2016) (Newman, J., dissenting).  Judge Newman

---

[8]  *See also Parallel Networks*, 2017 WL 1045912, at *11 ("the prior art references (or combinations) a petitioner 'could have raised' includes any references that were known to the petitioner or that could have been discovered by a skilled searcher conducting a diligent search" (quotation marks omitted)).

pointed out that "[t]he America Invents Act was designed—after a decade of hearings and revisions—to reduce the cost of patent litigation, to resolve major validity issues in an expert tribunal, and to put an end to repetitive challenges." *Id.* at 1357. Congress considered a lesser estoppel limited to only grounds raised in the IPR, but ultimately included "a strengthened estoppel standard to prevent petitioners from raising in a subsequent challenge the same patent issues that were raised or reasonably could have been raised in a prior challenge." *Id.* (quoting 157 Cong. Rec. S952 (Feb. 28, 2011) (statement of Sen. Grassley)).

At the time of enactment, Senator Grassley further summarized that "the purpose of the estoppel is to 'completely substitute' for the same issues in litigation." *Id.* at 1358 (quoting 157 Cong. Rec. S1360-94 (daily ed. Mar. 8, 2011) (statement of Sen. Grassley)). Similarly, PTO Director Dudas urged that IPRs "will serve as a substitute for court litigation and as such, should bind not only the patentee, but also the challenger as a decision on the merits in litigation would." *Id.* at 1357-58 (quoting *Patent Reform: The Future of American Innovation: Hearing Before the Senate Comm. on the Judiciary*, 110th Cong. 136-137 (2007)). His successor, PTO Director Kappos stated at a closing hearing on the AIA: "[The IPR] estoppel provisions mean that your patent is largely unchallengeable by the same party." *Id.* at 1358 (quoting *America Invents Act: Hearing on H.R. 1249 Before the House Comm. on the Judiciary*, 112th Cong. 52-53 (2011)). Based on the language and legislative history of the AIA, Judge Newman concluded that "[c]hallengers may choose between the IPR proceeding and district court litigation of the same issues, but Congress restricted the repetitive validity proceedings of the past." *Id.*

## IV.  ARGUMENT

Summary judgment of invalidity based on patents and printed publications is appropriate for all patents-in-suit that reached a final written decision in an IPR—i.e., the '774, '890, '690,

'399, and '138 patents—because WAC is estopped from re-litigating validity on (1) prior art that was addressed in a final written decision (*see infra* Section IV.A); (2) prior art that was raised but denied institution on the merits (*see infra* Section IV.B.1); and (3) any remaining patents and printed publications that WAC reasonably could have raised but did not raise in its IPR petitions, including but not limited to such prior art in WAC's invalidity contentions (*see infra* Section IV.B.2). Moreover, summary judgment of invalidity is appropriate with respect to prior art not already in WAC's invalidity contentions for the additional reason that the deadlines for preliminary and supplemental invalidity contentions have passed. *See infra* Section IV.B.3.

A.   **Summary Judgment of No Invalidity Is Warranted with Respect to Patents and Printed Publications over Which the PTO Affirmed the Patentability of the Asserted Claims in a Final Written Decision**

Summary judgment of no invalidity is warranted with respect to the patents and printed publications that WAC raised in the IPR proceedings and that the PTO addressed in a final written decision affirming the patentability of the asserted claims. The AIA estoppel provision prevents the petitioner in an IPR that results in a final written decision from asserting in a civil action "that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2). Philips Lighting believes that there is no dispute that this provision bars WAC from re-litigating the following art over which the PTO expressly reviewed and confirmed patentability of the asserted claims in a final written decision:

| Patent | Estopped Art |
|---|---|
| '774 patent | Turnbull and Kish |
| '890 patent | ST Micro Datasheet and Biebl |
| '399 patent | Hochstein, Bogdan, and Faulk |
| '138 patent | Hochstein, Bogdan, and Faulk |

*See supra* Section II.B.

**B.      Summary Judgment of No Invalidity Is Warranted with Respect to the Remaining Patents and Printed Publications that WAC Raised or Reasonably Could Have Raised During the IPRs**

The remaining patents and printed publications at the center of the parties' dispute can be divided into two groups: (1) non-instituted art, which WAC raised in its IPR petitions and the PTO denied institution; and (2) non-petitioned art, which WAC chose not to raise in its IPR petitions.  WAC takes the position that AIA estoppel does not apply to non-instituted and non-petitioned art, but courts have found that it does—and thus summary judgment is warranted—for both groups.  Furthermore, summary judgment is warranted for art that WAC did not raise in its invalidity contentions for the additional reason that contention deadlines have passed.

**1.      WAC is estopped from asserting invalidity based on patents and printed publications that WAC raised in its IPR petitions, but on which the PTO denied institution on the merits.**

Summary judgment of no invalidity is warranted for patents and printed publications that WAC raised in its IPR petition, but that the PTO denied institution on the merits.  Before issuing a final written decision, the PTO denied institution—on the merits—of grounds based on the following art:

| Patent | Estopped Art |
|---|---|
| '890 patent | Biebl[9] and Hochstein |
| '690 patent | Yamakawa and Yamakawa II |

*See supra* Section II.B.  This art is estopped under § 315(e)(2).

The plain language of § 315(e)(2) includes no exemption for grounds on which the PTO denied institution.  The statute specifies that the petitioner is estopped on "any ground" that was "raised or reasonably could have been raised" during the IPR once a final written decision issues.

---

[9] As explained, WAC is also estopped from asserting Biebl because the PTO found the asserted claims patentable over Biebl in its final written decision.  *See supra* Section IV.A.

*Id.* The statute does not differentiate between instituted or non-instituted grounds, nor would it have made sense to do so. By including grounds that "reasonably could have been raised," Congress clearly intended for the estoppel to cover grounds that the IPR petitioner never raised at all. An estoppel exception for non-instituted grounds would create the inexplicable outcome that grounds never raised but that "reasonably could have been raised" would be estopped, while grounds actually raised and denied institution would not be. This misreading would create a perverse incentive for petitioners to present numerous back-up grounds in a petition in an intentionally deficient manner for the sole purpose of avoiding estoppel once those grounds are predictably denied institution.

The legislative history supports estopping the petitioner from asserting art in grounds that the PTO denied institution on the merits for lack of any reasonable likelihood of success. *See supra* Section III.B. As Judge Newman recognized, the AIA was designed to reduce the cost of patent litigation, resolve validity issues in an expert tribunal, and put an end to repetitive challenges. *SAS Inst.*, 825 F.3d at 1357 (Newman, J., dissenting). Congress included a "strengthened estoppel" so that the IPR proceeding would "completely substitute" for court litigation, and make the patent "largely unchallengeable by the same party." *Id.* at 1357-58. Thus, challengers may choose between an IPR and district court litigation, but they cannot choose both. *Id.* at 1358. To hold otherwise would eviscerate the intended purpose of IPRs.

No Federal Circuit holding precludes applying § 315(e)(2) estoppel to non-instituted grounds. In dicta, the Federal Circuit has discussed the scope of estoppel as applied to PTO proceedings under a different section—i.e., § 315(e)(1). *See Shaw*, 817 F.3d at 1299-1300; *HP*, 817 F.3d at 1347-48. In those cases, the court stated that no estoppel applies in a later IPR proceeding to grounds that the PTO declined to institute in an earlier IPR proceeding for a

procedural reason—redundancy.  *See Shaw*, 817 F.3d at 1299-1300; *HP*, 817 F.3d at 1347-48. Besides the fact that those statements are dicta and involve a different statutory provision, this case is further distinguishable because, here, the PTO denied institution on the merits—not for any procedural reason such as redundancy—because the grounds lacked any reasonable likelihood of success.  *See* D.I. 118-5 at 10, 13; D.I. 118-4 at 10, 16, 18.

Although district courts are split, at least one court has interpreted § 315(e)(2) in light of *Shaw* and *HP* to find that estoppel applies to grounds denied institution on the merits where the PTO reached a final written decision on other grounds.  *Biscotti*, 2017 WL 2526231, at *4-8.[10] In *Biscotti*, the court acknowledged a broader reading of *Shaw* and *HP* that would estop only instituted art, but recognized the "increasing concern in the trial courts" prompted by this reading.  *Id.* at *5.  Specifically, limiting estoppel to only post-institution grounds (1) "protracts litigation concerning the validity of the asserted patent," undermining the purported efficiency of IPR; and (2) allows dissatisfied IPR petitioners to return to court with invalidity challenges based on prior art that was originally included in invalidity contentions, accompanied by requests to amend the contentions to include additional prior art—art that is "often similar if not identical to the art raised in the IPR petition, albeit under a different name."  *Id.* at *5-6.

The *Biscotti* court rejected the broader application of *Shaw* and *HP* in favor of a narrower reading, which cabins those cases to their facts, i.e., "where a party raises a ground in the petition but the [PTO] procedurally declines to institute IPR on that ground."  *Id.* at *6.  The court adopted this narrower reading because it is consistent with due process, the language and legislative history of the AIA, and the circumstances in *Shaw* and *HP*.  *Id.* at *6-7.  Thus, the

---

[10] *Biscotti* is a report and recommendation from Magistrate Judge Payne, which District Judge Gilstrap reviewed de novo and adopted in whole.  *See* Ex. 3, *Biscotti*, No. 2:13-cv-1015, slip op. at 2 (E.D. Tex. June 2, 2017).

*Biscotti* court limited the estoppel exception to only grounds that were denied institution for purely procedural reasons and estopped the defendant from asserting: (1) grounds the PTO found insufficient to establish unpatentability in a final written decision; (2) grounds which the PTO denied institution on the merits for lack of a reasonable likelihood of success; and (3) grounds the petitioner did not include, but reasonably could have included, in the petition. *Id.* at *7.

### 2. WAC is estopped from asserting invalidity based on patents and printed publication that WAC did not raise—but reasonably could have raised—in its IPR petitions.

Summary judgment of no invalidity is further warranted for patents and printed publications that WAC did not raise, but reasonably could have raised, in its IPR petition. This art includes the following patents and printed publications identified in WAC's invalidity contentions, as well as any other patents and printed publications that WAC reasonably could have raised:

| Patent | Estopped Art in WAC's Invalidity Contentions |
| --- | --- |
| '774 patent | U.S. Patent Nos. 1,888,995, 4,975,814, 5,278,432, and 5,704,709 |
| '890 patent | U.S. Patent Nos. 4,721,344, 5,643,711, and 6,009,005; U.S. Pub. No. 2002/0047642; the Unitrode Datasheet; and Horowitz |
| '690 patent | U.S. Patent No. 4,880,974 |
| '399 patent | PCT Pub. Nos. WO 99/30537 and WO 00/42700 |
| '138 patent | U.S. Patent No. 6,338,393; and PCT Pub. Nos. WO 99/30537 and WO 00/42700 |

*See supra* Section II.A.  The IPR estoppel provision estops the art identified in the above table and any other art that was known to WAC or that a skilled searcher could have found in a diligent search.

The § 315(e)(2) estoppel should apply to non-petitioned art for the same reasons as non-instituted art.  *See supra* Sections III.B, IV.B.1.  Congress considered an estoppel provision that was limited to only grounds that petitioner actually raised, but included a "strengthened estoppel" to cover "any ground" that petitioner "reasonably could have raised," so that the IPR would "completely substitute" the district court litigation on the question of invalidity based on patents and printed publications.   35 U.S.C. § 315(e)(2); *SAS Inst.*, 825 F.3d at 1357-58 (Newman, J., dissenting); *Biscotti*, 2017 WL 2526231, at *4-8.  To find otherwise would allow petitioners to deliberately hold back-up art in reserve to re-litigate invalidity in district court if they are dissatisfied with the PTO's decision in the IPR.

Many courts have recognized this backward incentive and correctly ruled—even after *Shaw* and *HP*—that § 315(e)(2) estops a petitioner from raising non-petitioned grounds that reasonably could have raised in the IPR petition.  *Biscotti*, 2017 WL 2526231, at *7 (applying estoppel to "grounds not included in a petition that a 'skilled searcher conducting a diligent search reasonably could have been expected to discover'"); *Cobalt Boats*, slip op. at 4-6 (applying estoppel to grounds that petitioner "could have raised in the IPR petition" because holding otherwise would "render[] the IPR estoppel provisions essentially meaningless" and "waste this Court's time to allow a stay for a year during IPR proceedings and then review invalidity arguments that Defendants could (and perhaps should) have raised in their IPR petition"); *Douglas Dynamics*, 2017 WL 1382556, at *4 (applying estoppel to non-petitioned grounds; "If the defendant pursues the IPR option, it cannot expect to hold a second-string invalidity case in reserve in case the IPR does not go defendant's way."); Ex. 5, *iLife Techs., Inc. v. Nintendo of Am. Inc.*, No. 13-cv-4987, slip op. at 6 (N.D. Tex. Mar. 1, 2017) (applying estoppel to a non-petitioned, prior-art patent that "*was* eligible to be raised during the IPR";

"because [the defendant] did not raise it then, it is estopped from asserting it now"); *Parallel Networks*, 2017 WL 1045912, at *11-12 (holding that estoppel applies to non-petitioned art, including "any references that were known to the petitioner or that could have reasonably been discovered by 'a skilled searcher conducting a diligent search'"); *Precision Fabrics*, 2016 WL 6839394, at *9 (holding that non-petitioned grounds were estopped under § 315(e)(2)).

At least one district court has ruled the other way, but Philips Lighting submits that this decision is not persuasive. *See Intellectual Ventures I LLC v. Toshiba Corp.*, No. 13-cv-453, 2017 WL 107980, at *1-2 (D. Del. Jan. 11, 2017). In *Intellectual Ventures*, the district court interpreted "could have raised during the inter partes review" in § 315(e)(2) to cover art that the petitioner could have raised *after* institution. *Id.* at *1. This reading cannot be correct because the PTO only institutes art that the IPR petitioner actually *raised* in the petition, and after institution, the petitioner cannot raise—and the PTO will not consider—any new art that was not raised in the petition. *See* 35 U.S.C. §§ 312(a)(3), 316(e); *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016). Thus, interpreting "could have raised" to refer only to post-institution art renders the phrase empty because, in practice, it would only include art that the petitioner had actually raised in the petition, which is not what Congress intended. *See U.S. v. Alaska*, 521 U.S. 1, 59 (1997) ("The Court will avoid an interpretation of a statute that renders some words altogether redundant." (quotation marks omitted)).[11]

Indeed, the *Intellectual Ventures* court recognized that its interpretation of § 315(e)(2) is contrary to the purpose of the AIA because it "leads to the conclusion that a company can play games between the [PTO] (IPR) and the courts (litigation), asserting some references in

---

[11] *See also Freytag v. Commissioner*, 501 U.S. 868, 877 (1991) ("Our cases consistently have expressed a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment." (quotation marks omitted)).

connection with the IPR but reserving some for litigation." *Intellectual Ventures*, 2017 WL 107980, at *1 (acknowledging that the court's decision leads to an outcome that "does not strike me as necessarily consistent with the notion of having a parallel administrative proceeding that is supposed to supplant litigation and provide a faster, cheaper, better resolution to patent disputes"). Thus, the *Intellectual Ventures* court found no estoppel *not* because it strongly endorsed that position, but merely "with the hopes that an appeal may clarify the issue for future judges in future cases." *Id.* at *2. As explained above, numerous courts have correctly interpreted § 315(e)(2) to cover non-petitioned art, consistent with the statute and the dicta in *Shaw* and *HP*.

Accordingly, summary judgment of no invalidity is warranted for any patents and printed publications that petitioner did not raise, but reasonably could have raised, during the IPR, which includes "any references that were known to the petitioner or that could have reasonably been discovered by 'a skilled searcher conducting a diligent search.'" *Parallel Networks*, 2017 WL 1045912, at *11; *see also Biscotti*, 2017 WL 2526231, at *7. For prior art in WAC's invalidity contentions, WAC cannot legitimately argue that it could not have reasonably raised that art during the IPRs because WAC knew about those references before filing its petitions. *See* D.I. 20-3 at 1-2 (contentions due in January and April 2015); D.I. 85 (petitions filed May 28, 2015). WAC had (and took) an entire year from the service of the complaint to file its IPR petitions, and WAC's counsel was already familiar with much of the prior art since before the filing of the complaint based on prior litigation. *Compare* Ex. 1 at 42 *with* Ex. 6, Joint Stipulation of Dismissal at 2, *Tech. Consumer Prods., Inc. v. U.S. Philips Corp.*, No. 1:12-cv-02546 (N.D. Ohio Jan. 6, 2014) (ECF No. 53) (listing same attorneys). For other patents and printed publications not already in WAC's contentions, WAC is estopped on all such art known

to WAC or that a skilled searcher could have found based on a diligent search.  *Parallel Networks*, 2017 WL 1045912, at *11; *see also Biscotti*, 2017 WL 2526231, at *7.

> **3.     Summary judgment is warranted for patents and printed publications not already in WAC's invalidity contentions for the additional reason that the deadlines for contentions have passed.**

Summary judgment is warranted for patents and printed publications not already in WAC's contentions for the additional reason that the deadlines for contentions have passed.  The Court adopted the parties' agreed schedule for contentions, making preliminary contentions due on January 8, 2015, and supplemental contentions due up to thirty days before the claim construction hearing (the parties later stipulated to brief extension to April 23, 2015)—almost one year after Philips Lighting served the complaint to WAC.  D.I. 20-3 at 1-2; D.I. 22. Although the Court has not yet adopted a schedule for events after claim construction, WAC takes the position that it can supplement with new art based on the agreed due date for final invalidity contentions, which is thirty days after the claim construction order.  D.I. 20-3 at 2. Besides that the final contentions deadline cannot circumvent the estoppel statute, it also is not intended for a complete do-over on invalidity—otherwise, having deadlines for preliminary and supplemental contentions would be meaningless.

Amendments by right in final contentions are limited to changes rendered necessary by the Court's claim construction order.  *See* LR, App'x E, at 2.  Any other changes require permission of the Court based on showing good cause.  *See id.*  The final contentions deadline is not an opportunity to start over and raise new contentions simply because WAC is dissatisfied with the outcome of the IPRs.  *See id.* at 2, 4 (providing sample scheduling order and permitting updated invalidity disclosures after a claim construction hearing only if "necessary" after the Court's ruling on claim construction or for "good cause"); D.I. 20 at 8 (agreeing that patent disclosures "shall be made . . . as delineated in the 'Sample Special Scheduling Order for Patent

Infringement Cases' found in Appendix E to the Local Patent Rules").  There is no good cause for WAC to raise new patents or printed publications that were known to WAC or that a skilled searcher could have found based on a diligent search.  Because courts have the inherent authority to manage their cases and set their case schedules for patent disclosures, *see Englishtown, Inc. v. Rosetta Stone Inc.*, 962 F. Supp. 2d 355, 359 (D. Mass. 2013), the passing of deadlines to which WAC agreed provides additional support for granting summary judgment of no invalidity.

## V.    CONCLUSION

For the reasons above, summary judgment of no invalidity under 35 U.S.C. §§ 102 and 103 based on patents and printed publications should be granted for the asserted claims of the '774, '890, '690, '399, and '138 patents.


Dated: June 23, 2017                           Respectfully submitted,

                                               /s/ C. Brandon Rash
                                               C. Brandon Rash (*pro hac vice*)
                                               brandon.rash@finnegan.com
                                               Mandy Song (*pro hac vice*)
                                               mandy.song@finnegan.com
                                               Cara Regan Lasswell (*pro hac vice*)
                                               cara.lasswell@finnegan.com
                                               FINNEGAN, HENDERSON, FARABOW,
                                                  GARRETT & DUNNER, LLP
                                               901 New York Avenue, NW
                                               Washington, DC 20001
                                               Telephone: (202) 408-4000
                                               Facsimile: (202) 408-4400

                                               **Attorneys for Plaintiffs**
                                               Koninklijke Philips N.V. and
                                               Philips Lighting North America Corporation

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as nonregistered participants on June 23, 2017.

/s/ C. Brandon Rash
C. Brandon Rash (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

**Attorney for Plaintiffs**
Koninklijke Philips N.V. and
Philips Lighting North America Corporation